# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVIS SWANS, an Individual, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>FIELDWORKS, LLC, a District of Columbia limited liability company; and DOES 1 through 100, inclusive,<br><br>      Defendant. | Case No. 2:22-cv-07250 SPG (MRWx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [ECF NO. 34]** |

  Before the Court is an unopposed motion for preliminary approval of a class action settlement from Plaintiff Travis Swans ("Plaintiff"), individually and on behalf of the class he seeks to represent. (ECF No. 34 ("Motion")). Having considered the parties' submissions, the relevant law, and the record in this case, the Court finds these matters suitable for resolution without a hearing. *See* Fed. R. Civ. P. 78(b); C. D. Cal. L. R. 7-15. For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion.

## I. BACKGROUND

### A. Plaintiff's Allegations

This is a putative wage and hour class action lawsuit brought by Plaintiff against Defendant Fieldworks, LLC ("Defendant") seeking monetary damages, including restitution. Plaintiffs are all non-exempt current and former employees employed by Defendant in California. (ECF No. 30 ("FAC") ¶ 1). On August 29, 2022, Plaintiffs filed their Class Action Complaint in Los Angeles Superior Court alleging nine causes of action. (ECF No. 1-1). On October 5, 2022, Defendant removed the Case to this Court. (ECF No. 1). On October 25, 2022, Plaintiffs filed a motion to remand, which this Court denied on January 17, 2023. (ECF Nos. 11, 27). Plaintiffs then filed their First Amended Complaint ("FAC") on February 28, 2023. (ECF No. 30).

In Plaintiffs' FAC, Plaintiffs asserts claims for (1) failure to pay overtime wages, (2) failure to pay minimum wages, (3) failure to pay overtime wages at the legal overtime pay rate, (4) failure to provide meal periods or compensation in lieu of, (5) failure to provide paid rest periods, (6) failure to timely furnish accurate itemized wage statements, (7) failure to reimburse employee expenses in violation of Labor Code §§ 2800 and 2802, (8) violation of Labor Code § 203, (9) unfair business practices, and (10) penalties pursuant to Labor Code § 2698 *et seq*.

Plaintiffs notified the Court of the settlement on February 14, 2024, and filed the instant Motion for Order Granting Preliminary Approval of Class Action Settlement on March 1, 2024. (ECF Nos. 32, 34).

### B. The Settlement Agreement

According to Plaintiff's Motion, on April 11, 2023, the Parties attended a mediation with Hon. Dickran Tevrizian (Ret.), a retired Judicial Officer of this Court and an experienced mediator of wage and hour class actions. (Mot. at 12). At this mediation, the Parties reached a settlement pursuant to a memorandum of understanding. (*Id.*). On November 20, 2023, the Parties reached a long-form agreement. (*Id.*). Plaintiff represents that the Class and Representative Action Settlement Agreement was negotiated at arms-

length between counsel. (Mot. at 11); (ECF No. 34-1 ("Settlement" or "Settlement Agreement")). The Settlement Agreement provides the following key provisions:

1. <u>Class Definition</u>

The Settlement Agreement defines the putative class as follows: "Defendant's non-exempt employees, both current and former, who performed services in the state of California from August 30, 2018 through August 30, 2022." (Settlement Agreement at 11). Defendant estimates that there are approximately 1038 class members. (Settlement Agreement at 21).

2. <u>Monetary Relief</u>

The gross settlement amount agreed upon by the parties is $135,000. The Settlement Administrator will distribute payments to class members in accordance with each "Class Members' Total Workweeks." (Mot. at 13); (Settlement Agreement at 19). Ten thousand of the class settlement amount shall be allocated for settlement of claims for civil penalties under PAGA, Labor Code section 2699. Plaintiff Travis Swan seeks a class representative service payment of $5,000. (Settlement Agreement at 17).

3. <u>Attorneys' Fees and Costs</u>

The putative class seeks to be represented by Bruce Kokozian and Brian Andrews of Kokozian Law Firm, APC. Class Counsel intends to seek up to one-third of the gross settlement amount (i.e., $45,000) as attorneys' fees, and no more than $15,000 as reimbursement for expenses. (Mot. at 13); (Settlement Agreement at 17-18).

4. <u>Release of Claims</u>

The Settlement Agreement includes a general release of claims, which states, in relevant part: "Upon the Effective Date, and upon Defendant fully funding the settlement amount, Participating Class Members hereby release, acquit and discharge the Released Parties from any and all claims that were asserted against Defendant in the First Amended Complaint or that could have been asserted based on the factual allegations alleged in the First Amended Complaint, including those for the alleged class claims alleged in the First Amended Complaint which occurred during the Class Period, and expressly excluding all

other claims, including claims for wrongful termination, unemployment insurance, disability, social security, and workers' compensation, and claims outside of the Class Period…." (Settlement Agreement at 29).

## II.   LEGAL STANDARD

Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In considering such a request, the court must give the Rule 23 certification factors "undiluted, even heightened, attention in the settlement context." *Id*. Once a class is certified, Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig*., 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before approving a class action settlement under Rule 23, a district court must conclude that the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998). In the Ninth Circuit, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (quoting *In re Syncor*, 516 F.3d at 1101).

Court approval of a class action settlement requires a two-step process—a preliminary approval followed by a later final approval. *See Tijero v. Aaron Bros., Inc.*, No. C 10–01089 SBA, 2013 WL 60464, *6 (N.D. Cal. Jan. 2, 2013) ("The decision of whether to approve a proposed class action settlement entails a two-step process."); *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, *2 (E.D. Cal. June 13, 2006) (same). At the preliminary approval stage, the court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *See* Manual for Complex Litigation (Fourth) § 21.632 (2004). However, the "settlement need only be *potentially* fair, as the Court will make a final determination of

its adequacy at the hearing on Final Approval." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original).

## III. DISCUSSION

The parties seek conditional certification of the settlement class pursuant to Rule 23. For the reasons discussed below, the Court finds that Rule 23's requirements of numerosity, commonality, typicality, and adequacy of representation are all satisfied. *See* Rule 23(a)(1)–(4).

### A. Rule 23(a)

#### 1. Numerosity

A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable. *Hanlon*, 150 F.3d at 1019. To be impracticable, joinder must be difficult or inconvenient, but need not be impossible. *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012). Although there "is no numerical cutoff for sufficient numerosity," generally 40 or more members will satisfy the numerosity requirement. *Woodard v. Labrada*, No. EDCV 16-00189 JGB (SPx), 2019 WL 4509301, at *4 (C.D. Cal. Apr. 23, 2019) (citing *Keegan*, 284 F.R.D. at 522). Here, Class Counsel estimates that there are approximately 1038 settlement class members. Thus, numerosity is satisfied.

#### 2. Commonality

Plaintiffs' claims meet the commonality requirement when they "depend upon a common contention . . . capable of classwide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (internal quotation marks omitted). Thus, where the circumstances of class members "vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Id.* (internal quotation marks omitted).

Here, Plaintiffs were employed by Defendant and allege common wage and hour violations by Defendant. Thus, the Court finds that there is a single common question sufficient to meet the commonality requirement of Rule 23(a)(2).

### 3. Typicality

Rule 23(a)(3) requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class they seek to represent. Fed. R. Civ. P. 23(a)(3). The purpose of the typicality requirement is to "ensure[] that the interest of the class representative 'aligns with the interests of the class.'" *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon*, 976 F.2d at 508). "A court should not certify a class if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Just Film*, 847 F.3d at 1116 (quoting *Hanon*, 976 F.2d at 508).

Here, Plaintiff's claims are typical of the class because they arise out of the alleged wage and hour violations by Defendant. The putative class is comprised of other employee class-members who allege identical harms by Defendant. Thus, Plaintiff's claims are identical to those of the putative class, are based on the same alleged course of conduct, and involve the same injuries as those of the putative class. *See also* (ECF No. 34-1 ("Swans Decl.") ¶ 6).

### 4. Adequacy of Representation

Rule 23(a)(4) requires the Court to determine if the proposed class representatives and proposed class counsel will fairly and adequately protect the interests of the entire class. Fed. R. Civ. P. 23(a)(4). Class representatives are adequate if they have no conflicts of interest with the potential class and will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020.

Here, Plaintiff seeks the same relief as members of the proposed class and has no apparent conflicts of interest with the putative class members. (Mot. at 18); (ECF No. 34-1 ("Kokozian Decl") ¶ 14). Moreover, counsel represents that "Plaintiff expended considerable effort in advancing the interests of the Class, including but not limited to time speaking with his counsel, gathering documents, assisting counsel in preparing for the mediation, and reviewing the Settlement, among other things, and his assistance was instrumental in achieving a settlement amount that is significant to the similarly situated individuals he sought to represent." (Kokozian Decl. ¶ 15). In addition, Plaintiff has retained qualified and competent counsel, whose adequacy is discussed in detail below. Based on the foregoing, the Court believes the proposed class representatives and counsel will adequately represent the interests of the class.

**B.     Rule 23(b)**

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. Plaintiff seeks to certify the proposed class under Rule 23(b)(3). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry asks the court to make a global determination of whether common questions prevail over individualized ones." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). "[A]n individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Id.* (quoting *Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). As described above, all putative class members' claims relate to the same alleged wage and hour violations, or are derivative of those alleged violations. Courts in this

district have held that "[w]hen the claim is that an employer's policy and practices violated labor law, the key question for class certification is whether there is a consistent employer practice that could be a basis for consistent liability." *Kamar v. RadioShack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008). Since Plaintiff alleges that Defendant has "established a *policy* which does not compensate said employees for the time they actual worked. . . ," Plaintiff has satisfied the Rule 23(b)(3) predominance inquiry for the purposes of this preliminary approval motion. (FAC ¶ 8).

Last, the Court must find that a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.* 97 F.3d 1227, 1234 (9th Cir. 1996). Plaintiff represents that "the relatively small amounts at issue for each member of the class, and difficulty proving liability, support a finding that maintaining this action as a class satisfies the superiority requirement." (Mot. at 19). The Court agrees. This putative class has over a thousand members, each asserting violations of a common policy by Defendant. This makes the class action clearly a superior vehicle for the resolution of these claims.

**C.    Rule 23(e)**

Once it has been established that the proposed settlement would bind class members, "the court may approve it only after a hearing and only finding that it is fair, reasonable, and adequate" after considering the following factors:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

 (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Before the revisions to the Federal Rule of Civil Procedure 23(e), the Ninth Circuit had developed its own list of factors to be considered. *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 964 (9th Cir. 2011) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). The revised Rule 23 "directs the parties to present [their] settlement to the court in terms of [this new] shorter list of core concerns[.]" Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. "The goal of [amended Rule 23(e)] is . . . to focus the [district] court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.*

    1. <u>Adequacy of Representation by Class Representatives and Class Counsel</u>

The first factor requires that the class representatives and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). The class representative here asserts that he has "expended considerable effort in advancing the interests of the Class, including, but not limited to, time speaking with his counsel, gathering documents, assisting counsel in preparing for the mediation, and reviewing the Settlement, among other things, and his assistance was instrumental in achieving a settlement amount that is significant to the similarly situated individuals [represented]." (Kokozian Decl. ¶ 15). Similarly, class counsel represents that they have leveraged their experience and resources to "vigorously pursue recovery on behalf of the putative class and protect the interests of all Class Members, including by comprehensively investigating the claims forming the basis of the Action." (Mot. at 22-23). Finally, counsel represents that he and his firm are "very experienced class action counsel, including specific focus in the areas of wage and hour issues." (Kokozian Decl. ¶ 9). Accordingly, this factor weighs in favor of approval.

### 2. Arm's Length Negotiation

The second factor requires that the proposed settlement has been negotiated at "arm's length." Fed. R. Civ. P. 23(e)(2)(B). Here, this Settlement Agreement arose out of a mediation session. (Mot. at 23). This suggests the negotiations were "conducted in a manner that would protect and further the class interests." Fed. R. Civ. Pro. 23(e), 2018 Advisory Committee Notes; *see also Kaupelis v. Harbor Freight Tools*, No. SACV 19-1203 JVS (DFMx), 2021 WL 4816833, at *9 (C.D. Cal. Aug. 11, 2021) (finding the Settlement to have been negotiated at arm's length where it was the result of a mediation session). Subsequently, the parties, each represented by experienced counsel, settled the action. Accordingly, this factor weighs in favor of approval.

### 3. Adequacy of the Relief

The third factor requires the court to consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). The Court addresses each in turn.

#### a) Costs, Risks, and Delay of Trial and Appeal

"Often, courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. Here, the Parties settled the Action before any substantive motions came before the Court. Plaintiff represents, however, that "Plaintiff and the Class ran the risk that no recovery would be obtained in the action if the matter proceeded to trial." (Mot. at 23-24). Additionally, counsel represents that Plaintiff and the Class would recover "21% of the estimated potential damages $135,000." (Mot. at 25). To determine whether that settlement amount is reasonable, the Court must consider the amount obtained in recovery against the estimated value of the class claims if successfully litigated. *Litty v. Merrill Lynch & Co., Inc.*, 2015 WL 4698475, at *9 (C.D. Cal. April 27, 2015). Here,

Courts in this circuit have routinely found that settlements of roughly 14% are "well within the range of possible approval." *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367 (C.D. Cal. July 9, 2013); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving a settlement that was approximately one-sixth of the maximum possible recovery). In light of the uncertainties of protracted litigation and the speed at which counsel was able to craft this settlement, the settlement amount reflects a fair and reasonable recovery for the class members. As such, this factor weighs in favor of preliminary class certification.

### b) Effectiveness of Proposed Method of Relief Distribution

The Court next considers the method for processing claims to ensure the proposed method facilitates filing legitimate claims. The Settlement Agreement lays out a plan of allocation that provides how class members receive payment. According to the Settlement Agreement, each class member will be compensated based on the number of workweeks they worked during the class period. (Settlement Agreement at 18-20). Each determination will be made by the authorized settlement administrator. (*Id.* at 17). Specifically, the settlement administrator will calculate a "workweek unit number" by dividing the net settlement amount by all class members' total workweeks. *See* (Mot. at 27); (Settlement Agreement at 19). Additionally, each class member will be given the opportunity to challenge the total pay periods allotted to them, object to the settlement, or opt out of the settlement, allowing those who feel they have claims that are greater than the benefits they can receive under this settlement, to pursue their own claims. (*Id.* at 24). The Court finds this method of relief distribution to be effective.

### c) Attorneys' Fees

The Court next considers "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). In considering the proposed award of attorneys' fees, the Court must scrutinize the Settlement for three factors that tend to show collusion: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the

defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class." *Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (internal quotation marks and alterations omitted).

Upon final approval, "Class Counsel will have to submit a formal motion for attorneys' fees along with evidence of time spent on the case and a lodestar calculation before the Court can approve a specific amount in attorneys' fees." *Kaupelis*, 2021 WL 4816833, at *10. The Settlement Agreement provides that "Class Counsel will apply to the Court for an award of not more than One-Third of the Gross Settlement Amount, which is $45,000, as their Class Counsel Fees Payment and an amount not more than $15,000 for all expenses incurred as documented in Class Counsel's billing records as their Class Counsel Litigation Expenses Payment. Defendant will not oppose any request for a Class Counsel Fees Payment and Class Counsel Litigation Expenses Payment consistent with this Agreement and approved by the Court." (Settlement Agreement at 17-18). The Court is concerned that the amount is one-third of the proposed settlement's value and therefore exceeds the 25% benchmark that courts in the Ninth Circuit generally find reasonable. *See Hanlon*, 150 F.3d at 1029 ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."). Nevertheless, at this preliminary approval stage, the Court finds that Plaintiffs' requested fees are sufficiently reasonable. *See Campos v. Converse, Inc.*, No. EDCV 20-1576 JGB (SPx), 2022 WL 1843223, at *10 (C.D. Cal. Apr. 21, 2022) (finding an attorneys' fees request for one-third of the settlement amount reasonable at the preliminary approval stage, subject to further scrutiny at the final stage). However, "the Court will further scrutinize [the amount] at the final approval stage. *See* (*Id.*).

The Court also notes that the presence of a clear sailing agreement in the Parties' Settlement Agreement may be a "subtle sign" of collusion. *See Zwicky v. Diamond Resorts Management Inc.*, 343 F.R.D. 101, 122 (D. Ariz. Nov. 15, 2022); (Settlement Agreement at 18). This is especially so since the attorneys' fees award comes out of the common fund

for relief. *Cf. Schuchardt v. Law Office of Rory W. Clark*, 2016 WL 232435, at *9 (N.D. Cal. Jan. 20, 2016) (finding that clear sailing provisions do not necessarily signal collusion where the attorneys' fees award does not come out of a common fund apportioned between relief for the class and attorneys' fees). Because the settlement award amount is presumptively reasonable and there are no other signs of possibly collusive behavior by counsel, the Court finds that the Settlement Agreement's attorneys' fees provisions are satisfactory at the preliminary approval stage. Nevertheless, the Court emphasizes that the total attorneys' fees award will be revisited at the final approval stage. Based on these enumerated factors within Rule 23(e)(2)(C), the Court finds that the adequacy of proposed relief weighs in favor of approval.[1]

### 4. Equitable Treatment Among Class Members

"Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. As evidenced by the Settlement Agreement's "Calculation" provisions, the settlement administrator will calculate each class members' individual settlement award by multiplying his or her total workweeks unit by the workweek unit number. *See* (Settlement Agreement at 19-20). In other words, each class member will have their share apportioned based on a common decision-procedure. Accordingly, because the proposed settlement treats all class members equally, this factor weighs in favor of approval.

In sum, therefore, the proposed Settlement Agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

---

[1] Rule 23(e)(3) provides that the parties "must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). The Parties here filed no such statement. Thus, subsection (iv) is neutral.

### 5. Sufficiency of Notice

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1). Notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

Here, Plaintiff represents that the Settlement Notice will be sent by first-class mail to the last known address of each settlement class member prior to the fairness hearing. Mailing the Notice to the last known addresses of class members "constitutes the best practicable notice under the circumstances." *Trujillo v. UnitedHealth Grp. Inc.*, 5:17-cv-2547-JFW (KKx), 2019 WL 13240414, at *2 (C.D. Cal. July 19. 2019). This method is thus sufficient.

Next, Plaintiff represents that the "Notice Plan satisfies all due process considerations and meets the requirements of Rule 23(e)." (Mot. at 28). Plaintiff represents and the Notice of Proposed Settlement of Class Action and Hearing Date for Final Court Approval clearly describes: (i) the nature of the action and class claims and terms and operation of the Settlement; (ii) the definition of the class and the nature and extent of the Released Claims; (iii) the maximum attorneys' fees, litigations expenses; (iv) the procedure and timing for objections and requesting exclusion and notice that a class member may enter an appearance through an attorney if the member so desires; and (v) subject to the Court's schedule, the date and location of the Fairness Hearing and the binding effect of any class judgment entered. *See* (Settlement Agreement at 22-24); (Mot.

at 28); (ECF No. 34-1). Thus, the proposed Settlement Notice and plan of notice sufficiently comport with due process.

## IV. CONCLUSION

For all the foregoing reasons, the Court GRANTS Plaintiff's motion to (1) conditionally certify the class as defined in the Settlement Agreement; (2) appoint Plaintiff Travis Swans as the class representative; (3) appoint Bruce Kokozian and Brian Andrews of Kokozian Law Firm, APC as settlement class counsel; and (4) order the dissemination of the Notice of Proposed Settlement of Class Action and Representative Action and Hearing Date for Final Court Approval, via United States First-Class Mail.

The hearing date for the Final Fairness Hearing is hereby set for Wednesday, June 12, 2024, at 1:30 p.m. in Courtroom 5C of the United States District Court for the Central District of California, First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012.

**IT IS SO ORDERED.**

DATED: April 12, 2024

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE