1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

11    TRAVIS SWANS, an individual, on behalf
      of himself and all others similarly situated

12                          Plaintiffs,

13                  v.

14

15    FIELDWORKS, LLC, a District of
      Columbia limited liability company; and

16    DOES 1 through 100, inclusive,

17                          Defendants.

Case No. 2:22-cv-07250 SPG (MRWx)

**ORDER GRANTING PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND
AWARD FOR ATTORNEYS FEES
AND COSTS [ECF NO. 46]**

18

19          Before the Court is an unopposed motion for final approval of a class action

20    settlement, award for attorneys' fees and costs, and class representative service payment

21    (ECF No. 46 ("Motion")) filed by Plaintiff Travis Swans, individually and on behalf of the

22    class he seeks to represent (collectively, "Plaintiffs").   Having considered the parties'

23    submissions, the relevant law, the oral arguments during the hearing on the Motion, and

24    the record in this case, the Court **GRANTS** Plaintiffs' Motion for Final Approval of Class

25    Action Settlement and Award for Attorneys' Fees.

26
27
28

# I.    BACKGROUND

In its previous Order denying, in part, Plaintiffs' motion for final approval of a class action settlement, award for attorneys' fees and costs, and class representative service payment, the Court recounted at length the factual and procedural background.  (ECF No. 49 ("October 2024 Order" or "Order")).  The Court, tasked with assessing the fairness of the proposed class Settlement, requested Plaintiffs submit supplemental briefing or a declaration to demonstrate how they determined the maximum potential recovery.  (*Id.* at 17).  Pursuant to this Order, Mr. Brian Andrews, one of Plaintiffs' counsel, filed a supplemental declaration.  (ECF No. 51 ("Andrews Supplemental Decl.")).  This present Order therefore incorporates by reference, rather than duplicates, the Court's prior analysis from its October 2024 Order.

# II.    LEGAL STANDARD

The Federal Rules of Civil Procedure mandates judicial approval of all class action settlements.  *See* Fed. R. Civ. P. 23(e).  When approving a class settlement prior to class certification, courts must engage in a two-step process.  *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  First, the court must certify the proposed settlement class.  *Id.* In considering such a request, the court must give the Rule 23 certification factors "undiluted, even heightened, attention in the settlement context." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Second, once a class is certified, the court may approve the class settlement "only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) ("The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights.").  Accordingly, before approving a class settlement, Rule 23(e) directs courts to consider the following factors when assessing the fairness, adequacy, and reasonableness of a class settlement:

    (A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorney's fees, including timing of payment;

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Where the parties reach a class action settlement prior to class certification, the Ninth Circuit has cautioned that such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (citing *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011)). A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id*. (quotations omitted).

Moreover, before the 2018 amendment to the Federal Rule of Civil Procedure 23(e), the Ninth Circuit developed its own list of eight fairness factors–commonly referred to as the "*Churchill* factors." *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 964 (citing *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004)). To determine the fairness of the proposed settlement, courts typically consider the following *Churchill* factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7)

the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *Churchill Village, L.L.C.*, 361 F.3d at 575. However, the amended Rule 23 "directs the parties to present [their] settlement to the court in terms of [this new] shorter list of core concerns[.]" Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes. "The goal of [amended Rule 23(e)] is . . . to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* Some of the *Churchill* factors tend to overlap with the factors from Rule 23(e). *See, e.g.*, *Lalli v. First Team Real Est.-Orange Cnty.*, No. 820CV00027JWHADS, 2022 WL 8207530, at *8 (C.D. Cal. Sept. 6, 2022) (deciding not to duplicate analysis when the second *Churchill* factor "closely mirrors" the first factor listed in Rule 23(e)(2)(C)); *Hang v. Old Dominion Freight Line, Inc.*, No. 5:21-CV-00287-JWH-DTBX, 2024 WL 2191930, at *7 (C.D. Cal. May 14, 2024).[1] Therefore, for the sake of avoiding repetitious analysis and remaining focused on the core concerns outlined by both Rule 23(e) and the Ninth Circuit, the Court will not duplicate its analysis where some factors from Rule 23(e) overlap with some *Churchill* factors.

## III.    FINAL SETTLEMENT APPROVAL

The parties seek approval of the proposed Settlement Agreement pursuant to Rule 23. For the reasons stated below, the Court grants the unopposed Motion to approve the proposed class Settlement.

### A.    Final Approval of the Proposed Class Settlement

Before approving the proposed Settlement Agreement, the Court must find that it is fair, reasonable, and adequate under Rule 23(e)(2). In its prior Order, the Court found that the first, second, and fourth factors under Rule 23(e)—namely, relating adequate representation of the class counsel and class representative, arm's length negotiations, and equitable treatment of class members—favored approval of the class Settlement. *See*

---

[1] After the Rule 23(e) amendment, the Ninth Circuit instructed "district courts to consider these [*Churchill*] factors in their holistic assessment of settlement fairness." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 n.4 (9th Cir. 2021).

*generally* (October 2024 Order at 8-14).  For the third factor—the adequacy of the class relief—the Court held in its previous Order that the risk of trial, the effective method of distributing relief to the class, and the incentive award to the class representative favored approval of the Settlement.[2]  *See* (*Id.* at 9-13).  The Court therefore first analyzes in this order the remaining third subfactor of Rule 23(e)(2)(C)—namely, the terms of the proposed award of attorneys' fees.  The Court then turns to a discussion of those remaining *Churchill* factors that have not already been addressed by the Court's October 2024 Order.

### 1. Proposed Award of Attorneys' Fees

When assessing the adequacy of class relief, courts review "the terms of any proposed award of attorneys' fees, including the timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).  In the context of a class settlement, "courts have an independent obligation to ensure that" any award of fees and costs "is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth*, 654 F.3d at 941.  The Court must, therefore, "scrutiniz[e] the fee arrangement for potential collusion or unfairness to the class" by analyzing three factors: (1) whether counsel "receive[d] a disproportionate distribution of the settlement"; (2) whether the parties agreed to a "clear sailing arrangement"; and (3) whether the settlement included a "kicker" or "reverter" clause.  *Briseño v. Henderson*, 998 F.3d 1014, 1023, 1026-27 (9th Cir. 2021).  However, "[t]he presence of these three signs is not a death knell."  *Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021).

Class Counsel request $45,000 in attorneys' fees—amounting to one-third of the Gross Settlement.  (Mot. at 14).  As discussed in its prior Order, the Court noted that the Settlement Agreement contained a clear sailing provision but did not include a reverter clause.  *See* (October 2024 Order at 10-12).  The Court, reviewing Class Counsel's supplemental declaration, finds the award of $45,000 in attorneys' fees reasonable.

---

[2] The Court, however, adjusted the incentive award to the class representative from $5,000 to $2,500.  *See* (October 2024 Order at 12-13).

In general, "courts typically use 25% of the fund as a benchmark for a reasonable fee award." *Martinez v. Helzberg's Diamond Shops*, No. EDCV201085PSGSHKX, 2021 WL 9181893, at *7 (C.D. Cal. Sept. 24, 2021) (citing *In re Bluetooth Headset*, 654 F.3d at 942). However, in many common funds cases, such as this one, the award exceeds this benchmark. *See Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) (collecting cases); *see also Romero v. Producers Dairy Foods, Inc.*, No. 1:05CV0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) ("Empirical studies show that, regardless [of] whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.") (internal quotation marks omitted) (quoting 4 Newberg and Conte, Newberg on Class Actions § 14.6 (4th ed. 2007)); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("[N]early all common fund awards range around 30%.").

Counsel's declaration discussed in detail the strength and weaknesses of Plaintiffs' claims. Particularly, Plaintiffs acknowledged that issues, such as why some class members did not take meal breaks, whether rest breaks were available to the class members, and whether Defendant willfully violated California labor codes, may arise during continued litigation. (Andrews Supplemental Decl. at 2-8). Plaintiffs, considering such issues, determined that the total realistic potential exposure of their claims amounted to $653,727. Given the significant uncertainties posed by continued litigation, the class Settlement of $135,000 was a positive result. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) (emphasizing that a "settlement amounting to only a fraction of the potential discovery does not per se render the settlement inadequate or unfair") (internal quotation marks and citation omitted); *see also Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 623-24 (N.D. Cal. 2014) (finding settlement amount of a wage and hour class action within the range of 9% and 27% of the total potential liability to be fair, adequate, and reasonable given the uncertainty of continued litigation).

Further, the $45,000 award of attorneys' fees is reasonable here. According to Class Counsel, this "matter was risky," and attorneys' fees were "contingent upon a successful

1   outcome which could not be predicted." (Andrews Supplemental Decl. ¶ 11). The

2   immense workload in this class action, Counsel maintains, caused the firm to decline

3   opportunities to work on "less risky cases in which recovery of fees was more certain."

4   (*Id.*). Given the Settlement's outcome and the litigation risks, the Court finds the requested

5   fee amount of $45,000 to be within a reasonable and fair range for approximately two years

6   of work on this complex case.

7            2.    The Remaining *Churchill* Factors

8            Turning to the *Churchill* factors, the Court has discussed in great length the strength

9   of Plaintiffs' case, the risk and complexity of further litigation, the risk of maintaining class

10  action status, the amount offered in the Settlement, the extent of discovery completed, and

11  the experience and views of Counsel. *See generally* (October 2024 Order); *see also supra*

12  Section III(A)(1).[3]  The class members' reaction to the proposed Settlement—the last

13  remaining factor—favors approval of the Settlement. To date, no Class member has

14  objected to the Proposed Settlement, and only one member has opted out. (Mot. at 13).

15  Thus, the Proposed Settlement has rendered positive reactions from most, if not all, Class

16  members, thereby favoring approval.

17  **IV.   Attorneys' Fees and Costs**

18           Awards of attorneys' fees in class action cases are governed by Federal Rule of Civil

19  Procedure 23(h), which provides that, after a class has been certified, the court may award

20  reasonable attorneys' fees and nontaxable costs. Attorneys' fees and costs "may be

21  awarded in a certified class action where so authorized by law or the parties' agreement."

22  *In re Bluetooth*, 654 F.3d at 941. Where litigation leads to the creation of a common fund,

23  and parties seek attorneys' fees using the percentage-of-recovery method, "courts typically

24  use 25% of the fund as a benchmark for a reasonable fee award." *Martinez*, 2021 WL

25  9181893, at *7 (citing *In re Bluetooth Headset*, 654 F.3d at 942). Courts may adjust the

26

27  _____

28  [3] The seventh factor—the presence of a governmental participant—is not applicable to this
    present case and therefore remains neutral in the Court's calculus of the *Churchill* factors.

-7-

percentage of the common fund as appropriate under the circumstances. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047–48 (9th Cir. 2002). If a requested award is an upward departure from the 25% benchmark, even if the defendant agrees to pay it, courts apply the following factors (the "*Vizcaino* factors"): (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs. *Vizcaino*, 290 F.3d at 1048–50. Courts are also encouraged to use a second method as a cross-check after choosing a primary method. *See Martinez*, 2021 WL 9181893, at *7 (citing *In re Bluetooth Headset*, 654 F.3d at 944–45).

Here, the proposed Settlement seeks an upward adjustment for an award of attorneys' fees amounting to 33% of the common fund. (Mot. at 8). The Court, weighing the *Vizcaino* factors, deems this upward adjustment for the attorneys' fees award appropriate. Under the first two factors—the results achieved and the risk of litigation— the proposed fee award is reasonable, adequate, and fair for the reason stated above, *see supra* Section III. Recovery of $135,000—amounting to approximately 21% of potential recovery—is a positive result, given the complex issues and defenses that are typically associated with wage and hour class actions such as this one. *Cf. Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (noting that in a class action alleging meal and rest period violations, "[t]hese types of claims would not generally produce substantial individual damage awards"). Further, Class Counsel took this case on a contingency fee basis, dedicated time and effort without guarantee of any recovery, and declined opportunities to litigate other cases to accommodate this case's complex workload. Continued litigation presented risks that could have foreclosed any recovery for Class members. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 (concluding that an attorneys' fees award worth 33.3% of the settlement was fair, considering the possibility of class decertification and "no [plaintiff] will recover anything from Mego"). Accordingly, the first and second factors favor approval of the attorneys' fee award.

1    The third factor—the skills required and quality of work—also favor approval.  The

2  "prosecution and management of a complex . . . class action requires unique legal skills

3  and abilities." *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1263 (C.D. Cal. 2016)

4  (internal quotation marks omitted) (alteration in original) (quoting *In re Omnivision*

5  *Technologies, Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D.Cal. 2008)).  As previously stated,

6  this class action presented complex issues involving detailed facts and complex law

7  regarding Class members' wages, rest periods, and meal periods.  Mr. Kokozian, a

8  seasoned litigator in labor law class actions for over 25 years and Managing Partner of his

9  law firm, along with Mr. Andrews and Mr. DiBona, dedicated extensive time over the past

10  two years litigating this case.  From conducting client interviews to engaging in preliminary

11  discovery production, Class Counsel have diligently litigated this case, rendering a positive

12  result for the Class members.  *See* (ECF No. 46-1 ("Kokozian Decl.") at 34-37).  This factor

13  weighs in favor of approving the award fee.

14    For the last factor, the contingency nature of the fee, Class Counsel represented

15  Plaintiffs on a contingency basis with a risk that the outcome may not result in favorable

16  results for the Class.  *See Spann*, 211 F. Supp. 3d at 1264 ("Courts consistently recognize

17  that the risk of non-payment or reimbursement of expenses is a factor in determining the

18  appropriateness of counsel's fee award.").  As previously discussed, *see supra* Section

19  III(A)(1), the contingency nature of this case, including the risk in advancing litigation

20  costs, favors granting the fee award.  *See Barbosa*, 297 F.R.D. at 449 ("Like this case,

21  where recovery is uncertain, an award of one-third of the common fund as attorneys' fees

22  has been found to be appropriate.").  The Court therefore, considering all factors, finds that

23  the award of attorneys' fees in the amount of $45,000 is reasonable.

24    To be sure, the Court will also examine the proposed award of attorneys' fees under

25  the lodestar method.  *See Vizcaino*, 290 F.3d at 1050 ("[T]he loadstar calculation can be

26  helpful in suggesting a higher percentage when litigation has been protracted [and] may

27  provide a useful perspective on the reasonableness of a given percentage award.").  Under

28  the lodestar method, a court must "multiply[] the number of hours reasonably expended on

the litigation by a reasonable hourly rate." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir. 2007).

Starting with the reasonable hourly rate, the Court looks to the "prevailing market rates in the relevant community" when determining a "reasonable hourly rate." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1200 (9th Cir. 2013). The relevant community is "the forum in which the district court sits" for purposes of deducing the prevailing rate. *Id.* (internal quotation marks omitted). Here, Class Counsel state that the hourly rate for Mr. Kokozian is $1,100, and the hourly rate for Mr. Andrews and Mr. DiBona is $600. Considering the prevailing market rate, as displayed in Mr. Kokozian's declaration, the Court finds the hourly rates reasonable for the attorneys. *See* (Kokozian Decl. at 10-11).

Turning to the number of hours reasonably expended, Class Counsel provided a chart displaying a breakdown for each attorney's hours dedicated to this case. *See generally* (*Id.* at 34-37). Mr. Kokozian dedicated 31.9 hours on this matter, while Mr. DiBona expended 10.9 hours and Mr. Andrews expended 24.3 hours. (*Id.*). In sum, the overall lodestar, Counsel maintains, amounts to $56,210. (*Id.* at 37). The attorneys' tasks included but were not limited to: drafting the complaint, conducting discovery, drafting remand motions, and drafting the motions for approval of the class action Settlement. (*Id.* at 34-37). Upon review of the attorneys' underlying tasks, the Court finds that the total number of hours in this case was reasonable. Therefore, under the lodestar method, the award of attorneys' fees for $45,000 remains reasonable, adequate, and fair.

Lastly, Class Counsel request reimbursement of $7,554.62 for litigation costs, as well as an allocation of $11,341.51 for settlement administrative costs. (Mot. at 19). Upon review of Counsel's itemized chart displaying all litigation costs, *see* (Kokozian Decl. at 32), and the Settlement Administrator's declaration, *see* (ECF No. 46-1, Ex. 1 ("Bulthuis Decl.") at 16-21), the Court finds these costs are reasonable and therefore awards a total of $18,896.13 in costs to be paid out of the Settlement fund.

1  **V.    CONCLUSION**

2         For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Final Approval

3  of Class Action Settlement.

4

5         **IT IS SO ORDERED.**

6

7  DATED:   December 10, 2024



8                                                    HON. SHERILYN PEACE GARNETT
                                                     UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28